IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSHUA LEE SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 7:22-cv-00238 |
| | ) |
| TWIN COUNTY REGIONAL | ) |
| HEALTHCARE, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant Carroll County Sheriff Kevin A. Kemp, by counsel, respectfully submits this memorandum in support of his motion to dismiss.

## **BACKGROUND**

Plaintiff Joshua Lee Smith filed this action on May 3, 2022 and filed the First Amended Complaint on June 29, 2022. (ECF Nos. 1; 30.) The First Amended Complaint ("FAC") is the current active pleading. In the FAC, Smith asserts several claims under federal and state law against numerous defendants, including this Defendant, Carroll County Sheriff Kevin A. Kemp. Smith's claims surround his arrest on May 3, 2020. Though Sheriff Kemp was not involved in Smith's arrest, Smith attempts to impose liability on the Sheriff in his official capacity for the actions of his Carroll County Sheriff's Office ("CCSO") deputies.

Smith alleges that on May 3, 2020, while he was at Twin County Hospital in Galax, Virginia, CCSO deputies Musser and Mabry became aware that Smith had an outstanding charge for failure to appear. (FAC ¶ 62.) The deputies responded to the hospital to arrest Smith. (*Id.* at ¶ 61.) Smith alleges he could not stand up when discharged from the hospital. (*Id.* at ¶ 64.) He claims deputies Musser and Mabry, with assistance from some of the nurses, "tore [him] out of

1

the hospital bed in an attempt to make him stand and, when he was unable to stand, they dragged him into a wheelchair and took [him] outside." (*Id.*) Musser and Mabry then transported Smith to the Carroll County General District Court for a bond hearing in the early hours of May 3, 2020. (*Id.* at ¶ 68.) Smith claims he pleaded for medical attention during the drive but was ignored. (*Id.* at ¶ 69.) In conclusory fashion, Smith alleges:

> As a result of a Carroll County Sheriff's Office policy, practice, custom, or lack thereof, Deputies Musser and Mabry did not provide Mr. Smith with appropriate medical treatment despite Mr. Smith's emergency medical condition, nor take appropriate precautions to ensure that Mr. Smith's medical condition would not be exacerbated by Mr. Smith's removal from the hospital and transportation to the magistrate's office.

(*Id.* at ¶ 70.)

Upon arrival, Smith alleges that deputies Horton, Y, and Z, who had joined Musser and Mabry, "forcefully pulled him" from the police car. (*Id.* at ¶ 72.) Smith claims "[a]s a result of a Carroll County Sheriff's Office policy, practice, custom, or lack thereof, Deputies Musser, Mabry, Horton, Y, and Z failed to take appropriate precautions or care when moving or physically touching Mr. Smith, an individual in the middle of a medical emergency." (*Id.* at ¶ 73.)

According to Smith, when he was unable to support his own weight to walk into the magistrate's office, the five deputies first pulled him up and he fell on the concrete. (*Id.* at ¶ 74.) The deputies then "began to physically drag [him] on a rubber welcome mat, all while berating him . . . call[ing] him a 'piece of shit junkie' and t[elling] Mr. Smith he'd just 'shot up some bad dope.'" (*Id.* at ¶ 75.) Smith alleges "[b]ecause of a Carroll County Sheriff's Office practice or lack thereof, Defendant CCSO Deputies did not take appropriate precautions or action to ensure that their treatment of Mr. Smith would not exacerbate his medical condition or cause him

2

harm." (*Id.* at ¶ 79.) Smith contends the deputies repeatedly pulled him up and he fell to the ground, and none of the deputies attempted to prevent his fall. (*Id.* at ¶ 80.)

After the bond hearing, Smith alleges the deputies shackled Smith's hands to his waist and shackled his ankles. (*Id.* at ¶ 89.) The deputies then allegedly "violently dragged him on the ground, through the office, [and] back to the curb outside." (*Id.* at ¶ 90.) Smith claims the deputies then threw him in the back of a police van by swinging him back and forth to gain momentum and throwing him in head-first. (*Id.* at ¶ 98.) Smith alleges it took the deputies multiple attempts to successfully throw him in the van, which meant he was repeatedly slammed into the back of the van. (*Id.* at ¶ 95, 97.) He alleges the deputies then drove him to the New River Valley Regional Jail ("NRVRJ"), and the driver drove "erratically," throwing Smith across the floor, and causing him pain. (*Id.* at ¶¶ 103-105.)

Smith again concludes the deputies acted as a result of a Sheriff's Office practice:

> Because of a Carroll County Sheriff's Office practice or lack thereof, Deputies Horton, Mabry, and Musser did not take appropriate precautions or action to ensure that their transportation of Mr. Smith would not exacerbate his medical condition or cause him physical harm while Mr. Smith was in their custody and under their direct control, such as securing him during the ride or refraining from a rough ride while a medically vulnerable person was on the floor in the back of the van.

(*Id.* at ¶ 108.) Smith contends he lost sensation in his body from his chest down when the van drove over a "particularly large bump," and he then lost consciousness. (*Id.* at ¶¶ 109-113.) He next woke up at the NRVRJ. (*Id.* at ¶ 114-118.)

Smith attempts to state claims against Sheriff Kemp in claims One (excessive force), Two (substantive due process), Three (procedural due process), Four (ADA), Eight (battery), Nine (assault), Eleven (intentional infliction of emotional distress ("IIED")), and Twelve (negligent infliction of emotional distress ("NIED")). Sheriff Kemp is entitled to Eleventh Amendment immunity, which bars all claims except Smith's ADA claim. The ADA claim is time-barred by

3

the applicable one-year statute of limitations. Notwithstanding the Eleventh Amendment immunity and statute of limitations defenses, Smith's allegations do not support a § 1983 claim against Sheriff Kemp (Claims One, Two, and Three), nor do they support claims for IIED or NIED. Accordingly, and for the following reasons, Sheriff Kemp requests dismissal of all claims against him.

**ARGUMENTS AND AUTHORITIES**

**I.        Standard of Review.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal when a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555.

A court should construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [the complaint's] legal conclusions." *Dist. 28, United Mine Workers, Inc. v. Wellmore Coal Corp*., 609 F.2d 1083, 1085 (4th Cir. 1979). Indeed, a court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order for a plaintiff's claims to survive dismissal, he must allege facts sufficient to state all the elements of his claim. *Bass v. E.I. DuPont de Nemours & Co*., 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp*., 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v.*

*United States*, 289 F.3d 270, 281 (4th Cir. 2002)). A plaintiff must provide the grounds of his entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**II.        Sheriff Kemp is entitled to Eleventh Amendment immunity from Smith's First, Second, Third, Eighth, Ninth, Eleventh, and Twelfth claims.**

There are no allegations that Sheriff Kemp had any interaction with Smith or was at all involved in the alleged incidents that give rise to this lawsuit. Smith asserts claims against Sheriff Kemp solely in his official capacity as Sheriff of Carroll County. Because Sheriff Kemp has Eleventh Amendment immunity from these claims, they must be dismissed.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state." U.S. Const. amend. XI. The U.S. Supreme Court has construed the Eleventh Amendment to establish that a non-consenting state is immune from suits brought in federal courts by citizens. *E.g.*, *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012) (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). This immunity extends to state agents and instrumentalities. *Regents v. Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

"In Virginia, suits against a Sheriff in his official capacity are suits against the state." *Botkin v. Fisher*, 2009 U.S. Dist. LEXIS 24554, at *18 (W.D. Va. 2009) (citing *Harris v. Hayter*, 970 F. Supp. 500, 502 (W.D. Va. 1997); *Blankenship v. Warren County*, 931 F. Supp. 447, 449 (W.D. Va. 1996)). Accordingly, Smith's claims against Sheriff Kemp in his official capacity are barred by the Eleventh Amendment.

There are three exceptions to Eleventh Amendment immunity: (1) if Congress has abrogated that immunity; (2) if the state has waived its immunity; or (3) the plaintiff seeks

injunctive relief from state officials. *Id.* at 13-14. None of the exceptions apply here. Congress has not abrogated the Sheriff's immunity, and the Commonwealth has not waived its immunity. *McConnell v. Adams*, 829 F.2d 1319, 1328-29 (4th Cir. 1987). Also, Smith does not seek injunctive relief. To the extent Plaintiff's request for declaratory relief is tantamount to injunctive relief, the injunctive relief exception does not apply.

"[T]he limited exception to Eleventh Amendment immunity created by *Ex parte Young*, 209 U.S. 123 (1908), provides only for prospective injunctive relief from a continuing violation of federal law." *Int'l Coalition for Religious Freedom v. Maryland*, 3 Fed. Appx. 46, 49 (4th Cir. 2001); *accord Booth v. Maryland*, 112 F.3d 139, 142 (4th Cir. 1997) ("*Ex Parte Young* represents a limited exception to Eleventh Amendment immunity, applicable only when plaintiffs allege an ongoing violation of federal law."). Smith alleged no facts in his First Amended Complaint to establish a continuing violation of federal law. As such, the exception does not apply. Smith cannot bring his claims against Sheriff Kemp because they are barred by the Eleventh Amendment. The Eleventh Amendment bar applies to Smith's § 1983 and state law claims alike.[1] *Lloyd v. Morgan*, 2015 U.S. Dist. LEXIS 35345, at *9 n. 4 (E.D. Va. Feb. 20, 2015) (collecting cases); *Parks v. Piedmont Technical College*, 1996 U.S. App. LEXIS 1279, at *2 (4th Cir. Jan. 31, 1996).

### III.      Smith's ADA claim is time-barred by the applicable one-year statute of limitations.

Smith asserts a claim against Sheriff Kemp under Title II of the ADA. (*See* FAC ¶¶ 199-204, 209-214.) "Title II of the ADA does not contain a statute of limitations." *A Society Without a Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011). As such, federal courts borrow the state

---

[1] Sheriff Kemp does not assert Eleventh Amendment immunity with respect to the ADA claim against him. Congress abrogated Eleventh Amendment immunity with respect to the ADA. *Fauconier v. Clarke*, 966 F.3d 265, 280 (4th Cir. 2020).

statute of limitations that applies to the most analogous state-law claim. *Id.* In Virginia, the one-year statute of limitations in the Virginia Disabilities Act applies to ADA claims brought in Virginia. *Id.* at 348. The cause of action accrues when a plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995). In other words, "an ADA claim accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of his injury." *Sims v. Clarke*, 2019 U.S. Dist. LEXIS 55022, at *12 (W.D. Va. Mar. 31, 2019).

On May 3, 2020, Smith had knowledge of the injuries allegedly inflicted by CCSO deputies. (*See* FAC ¶¶ 22, 68-113.) Therefore, Smith's ADA claim accrued, and the statute of limitations began to run, on May 3, 2020. He had until May 3, 2021 to file his ADA claim. However, Smith did not file this lawsuit until May 3, 2022, one year after the limitations period expired. Smith's ADA claim is therefore time-barred and must be dismissed.

**IV.     Smith's allegations fail to state a § 1983 claim against Sheriff Kemp as a matter of law.**

Even assuming, *arguendo*, that Smith's § 1983 claims against Sheriff Kemp are not barred by the Eleventh Amendment, they are not viable as a matter of law. Smith seeks to impose liability on the Sheriff in his official capacity for the alleged actions of subordinate deputies Musser, Mabry, and Horton. However, Smith's vague and conclusory allegations fail to establish an official capacity claim. A § 1983 suit against a government official in his official capacity is considered a suit against that public official's employer. *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 n. 2 (1997). Sheriff Kemp is a constitutional officer, Va. Const. Art. VII, § 4, and is the employer of sheriff's deputies in Carroll County. Va. Code § 15.2-1603; *see Wiatt v.*

*Marrs*, 2005 U.S. Dist. LEXIS 3487, at *3 (W.D. Va. Feb. 23, 2005) (finding that in the Title VII context, "a county sheriff, in his official capacity, is an 'employer'").

A local government employer cannot be held liable under § 1983 solely because one of its employees or agents has violated a person's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Local government entities are only liable for their own illegal acts. Accordingly, to impose liability on a governmental employer, a plaintiff must establish the existence of an official policy or custom that caused the deprivation of constitutional rights. *Id.*; *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."). "Where a plaintiff seeks to establish liability on the basis of an unconstitutional formal or informal municipal custom, as opposed to an express policy – he must demonstrate that such practices are "so frequent in occurrence that actual or constructive knowledge is implied." *Booker v. City of Lynchburg*, 2020 U.S. Dist. LEXIS 128818, at *20 (W.D. Va. 2020). In this context, liability attaches only where there is a "'deliberate choice to follow a course of action' by the 'official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Merely "going along with" the discretionary decisions made by subordinates is insufficient for liability to attach because that is not considered a delegation of authority to those subordinates to make policy. *Id.* (citing *Lytle v. Doyle*, 326 F.3d 463, 472 (4th Cir. 2003). A policy or custom will not be inferred from an employer's "inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984).

To assert a claim under this theory, a plaintiff must allege facts, beyond those surrounding his own injury and arrest, that reference actual events demonstrating a policy or custom that was the "moving force" behind the violation at issue. *Id.* at 230-31; *Lanford v. Prince George's County*, 199 F. Supp. 2d 297, 305 (D. Md. 2002); *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979) (finding the § 1983 claim against the fire department was properly dismissed because the "conclusory allegations of discrimination were not supported by any reference to particular acts, practices or policies of the Fire Department."). Under these principles, Smith's FAC lacks the requisite factual allegations to impose liability on the Sheriff.

With respect to Smith's excessive force claim (Claim One), Smith alleges:

> Defendant Sheriff Kemp failed to adequately train, supervise, and oversee Carroll County Sheriff's Office deputies. This, combined with its further failure to enforce and/or enact its own policies, practices, and procedures, led to a custom and practice of widespread and illegal excessive use of force, including through the practice of "rough rides," by Defendant CCSO deputies. Moreover, Sheriff Kemp knew or should have known that Defendant CCSO deputies and the New River Valley Regional Jail staff commonly use excessive force but failed to address these widespread violations of individuals' Fourth Amendment rights. These failures give rise to a further claim under 42 U.S.C. § 1983.

(FAC ¶ 147.) With respect to Smith's substantive due process claim (Claim Two), Smith alleges:

> Defendants NRVRJA and Sheriff Kemp failed to adequately train, supervise, and oversee their deputies. This, combined with their further failure to enforce their own policy guidelines, led to a custom and practice of widespread and illegal denial of necessary medical treatment for pretrial detainees, aggravated through the practice of "rough rides," by CCSO deputies. Moreover, Sheriff Kemp knew or should have known that CCSO deputies commonly delay medical treatment but failed to address these widespread violations of individuals' Fourth Amendment rights. These failures give rise to a further claim under 42 U.S.C. § 1983.

(FAC ¶ 161.) Smith alleges no policy, custom, or other allegations against Sheriff Kemp with respect to his procedural due process claim (Claim Three). (*See* FAC ¶¶ 178-198.) It appears some of Smith's other allegations are intended to attach to his official capacity claim against

9

Sheriff Kemp – but those allegations are similarly devoid of facts to support a policy or custom that caused Smith's alleged constitutional deprivations. Instead, Smith makes allegations against the deputies involving his detention, transport, and/or medical care in this case, and then simply concludes the deputies acted as a result of the Sheriff's policies or customs. (*See ¶¶* 70, 73, 79, 108.)

These conclusory allegations do not reference any particular conduct by Sheriff Kemp or others to support that the Sheriff implemented a policy or custom that caused the alleged constitutional deprivations complained of. Courts examining similar allegations have held them insufficient to state a *Monell* claim. For example, in *Lanford v. Prince George's County*, 199 F. Supp. 2d 297 (D. Md. 2002), Lanford alleged his injuries resulted from "a pattern and practice of improper conduct, and consist of a large number of individual acts of excessive force, improper supervision, police misconduct, and use of unnecessary force." *Id.* at 305. The Maryland District Court held "Lanford has provided no allegations, except those surrounding his own arrest and injury to establish that the Town of Cheverly or Prince George's County has a policy or custom of 'excessive force, improper supervision, police misconduct, and use of unnecessary force.' . . . [T]he court need not accept conclusory factual allegations devoid of any reference to actual events." *Id.* (citing *United Black Firefighters*, 604 F.2d at 847).

In *Jackson v. Brickey*, Jackson claimed his arrest for obstruction of justice lacked probable cause. He alleged, *inter alia*, that the arrest stemmed from the Saltville Police Department's "institution-wide failure to train its officers properly about the rule of law and the Constitutional rights of U.S. citizens" and its "*de facto* institution-wide policies about ignoring or being deliberately indifferent to Constitutional rights or violations of such rights." *Jackson v. Brickey*, 771 F. Supp. 2d 593, 604 (W.D. Va. 2011). The Court disregarded these allegations,

10

holding they were "mere conclusory statements regarding the police department's failure to train," which amounted to "naked assertions devoid of further factual enhancement." *Id.* (citing *Iqbal*, 129 S. Ct. at 1949 (internal quotations omitted). Jackson's "references to generalized deficiencies within the department d[id] not sufficiently flesh out his allegations." *Id.*

Likewise, Smith's allegations are naked assertions devoid of factual support. Smith "has provided no allegations, except those surrounding his own arrest and injury" to establish that Sheriff Kemp has a policy or custom of using excessive force or "rough rides" on detainees, failing to obtain medical care, or otherwise. *Lanford*, 199 F. Supp. 2d at 305. The FAC does not contain identifiable, factual conduct to establish a persistent, well-settled custom or fixed policy that caused the alleged actions by deputies Mabry, Musser, and Horton. Accordingly, the FAC fails to state a § 1983 claim against Sheriff Kemp.

**IV.     Smith failed to state a claim for intentional infliction of emotional distress (IIED) or Negligent Infliction of Emotional Distress (NIED).**

**A.     The allegations are insufficient to state a claim for IIED or NIED.**

To state a claim for IIED, Smith must allege facts to show the deputies' conduct was (1) intentional or reckless; (2) outrageous and intolerable; (3) that it caused him emotional distress; and (4) that the emotional distress is severe. *Russo v. White*, 241 Va. 23, 26 (1991). IIED claims are disfavored in Virginia and require proof by clear and convincing evidence. *Burnopp v. Carter Bank & Trust*, 2020 U.S. Dist. LEXIS 219157, at *5 (W.D. Va. Nov. 23, 2020). Each element must be pled with specificity. *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 136 (2000).

Smith alleges that as a result of the subject events he has a "deeply rooted terror and fear of law enforcement" (FAC ¶ 139), and "severe emotional harm" including "insomnia . . . anxiety, [and] nightmares." (*Id.* at ¶ 140.) Smith allegedly "frequently dreams that he is in a jail

11

cell and cannot breathe, and wakes up in a state of panic." (*Id.* at ¶ 141.)  Smith also claims he has chronic depression.  (*Id.* at ¶ 280.)  These allegations are insufficient to demonstrate the requisite specific, severe emotional injury to advance his claim.  *See S.R. v. Inova Healthcare Servs.*, 49 Va. Cir. 119, 128 (Fairfax 1999) (allegations that plaintiff suffered severe emotional distress in the form of "severe headaches, loss of appetite, insomnia, nausea, [and] crying fits" were insufficient to support a claim for IIED); *Cole v. Oakey*, 101 Va. Cir. 288, 294 (Roanoke City 2019) (allegations of, *inter alia*, drug relapse, depression and anxiety, recurring nightmares, suicidal thoughts, and extensive therapy were insufficient to establish the severe emotional distress necessary for an IIED claim).

For the same reasons, and for an additional reason, Smith's NIED claim also fails.  When conduct is merely negligent, the plaintiff must allege not only allegations of emotional distress, but also physical injury resulting therefrom.  *Thompson v. Town of Front Royal*, 117 F. Supp. 2d 522, 532 (W.D. Va. 2000).  "The requisite physical injury for a claim of negligent infliction of emotional distress must be the 'natural result of fright or shock proximately caused by the defendant's negligence.  In other words, there may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury.'"  *Thompson*, 117 F. Supp. 2d at 532 (quoting *Delk*, 259 Va. at 137-38).  In *Thompson*, for example, plaintiff's physical injury – the squeezing of plaintiff's hand by his supervisor – was insufficient to support a claim for NIED because the physical injury was not the result of the emotional distress.  *Thompson*, 117 F. Supp. 2d at 532.

Here, the FAC is devoid of allegations to show Smith's alleged emotional injuries manifested into physical symptoms.  Smith's alleged physical injuries resulted from the deputies' use of force; there are insufficient allegations of separate physical injuries caused by the

emotional distress. Smith's sole allegations with respect to physical injury are that he has "insomnia and panic attacks." (FAC ¶ 286.) These allegations cannot support the requisite physical injury.

In *Tibbetts v. Coleman Worldwide Moving LLC & Dircks Moving Servs.*, 2020 U.S. Dist. LEXIS 261443 (E.D. Va. Dec. 23, 2020), the U.S. District Court for the Eastern District of Virginia considered whether "anxiety, agitation, nightmares, flashbacks, *insomnia*, fear, *panic attacks*, visions, . . . [and] post-traumatic stress disorder" were sufficient symptoms to meet the physical injury requirement. *Id.* at *7 (emphasis added). Relying on the Supreme Court of Virginia's holding in *Myseros v. Sissler*, 239 Va. 8, 12 (1990), that symptoms of anxiety disorder are insufficient as proof of physical injury, the court found the plaintiff failed to plead sufficient physical injury. *Tibbetts*, 2020 U.S. Dist. LEXIS at *7. Smith's NIED claim similarly fails because his allegations of insomnia and panic attacks are insufficient to meet the physical injury requirement.

## CONCLUSION

For the foregoing reasons, Defendant Carroll County Sheriff Kevin A. Kemp respectfully requests that the Court dismiss with prejudice the Plaintiff's claims as detailed in this memorandum, and for such other relief as the Court may deem appropriate.

                CARROLL COUNTY SHERIFF
                KEVIN A. KEMP

                By: /s/ Julian F. Harf
                Julian F. Harf (VSB # 90775)
                GUYNN, WADDELL, CARROLL & LOCKABY, P.C.
                415 S. College Avenue
                Salem, Virginia 24153
                Phone: 540-387-2320
                Fax:   540-389-2350
                julianh@guynnwaddell.com

*Counsel for Defendant Carroll County Sheriff Kevin A. Kemp*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August, 2022, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing to

Aderson Francois, Esq.
Lucia Goin, Esq.
Marissa K. Hatton, Esq.
CIVIL RIGHTS CLINIC
GEORGETOWN UNIVERSITY
LAW CENTER
600 New Jersey Avenue NW, Suite 352
Washington, DC 20001
Aderson.Francois@georgetown.edu
Lucia.Goin@georgetown.edu
Marissa.Hatton@georgetown.edu
*Counsel for Plaintiff*

Joshua Erlich, Esq.
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd. #700
Arlington, VA 22201
jerlich@erlichlawoffice.com
*Counsel for Plaintiff*

Sheri H. Kelly, Esq.
Assistant Attorney General
Office of the Attorney General
204 Abingdon Place
Abingdon, VA  24211
skelly@oag.state.va.us
*Counsel for Defendant Karl R. Hade*

Coreen A. Silverman, Esq.
Hancock, Daniel & Johnson, P.C.
4701 Cox Road, Suite 400
Glen Allen, VA 23060
csilverman@hancockdaniel.com
*Counsel for Defendant Twin County Regional Healthcare*

Laura A. Weipert, Esq.
Littler Mendelson, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
lweipert@littler.com
*Counsel for Defendant Twin County Regional Healthcare*

C. Eric Stevens, Esq.
Littler Mendelson, P.C.
333 Commerce Street, Suite 1450
Nashville, TN 37201
estevens@littler.com
*Counsel for Defendant Twin County Regional Healthcare*

Brandy Burnette Balding, Esq.
Hancock, Daniel & Johnson, P.C.
208 Sunset Drive, Suite 354
Johnson City, TN 37604
bbalding@hancockdaniel.com
*Counsel for Defendant Twin County Regional Healthcare*

/s/ Julian F. Harf
Julian F. Harf (VSB # 90775)
GUYNN, WADDELL, CARROLL & LOCKABY, P.C.
415 S. College Avenue
Salem, Virginia 24153
Phone: 540-387-2320
Fax:    540-389-2350
julianh@guynnwaddell.com
*Counsel for Defendant Carroll County Sheriff Kevin A. Kemp*