IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| JOSHUA LEE SMITH, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | Case No. 7:22-cv-00238 |
| TWIN COUNTY REGIONAL HEALTHCARE, ) | |
| *et al.*, ) | **PLAINTIFF'S OPPOSITION TO** |
| ) | **DEFENDANT WRIGHT'S** |
| ) | **MOTION TO DISMISS** |
| *Defendants*. ) | |

Plaintiff Joshua L. Smith opposes the Motion to Dismiss (ECF No. 85) of Jeffrey L. Wright. Mr. Smith has plausibly and adequately pleaded his claim against Defendant Wright arising under the Americans with Disabilities Act ("ADA"), and this Court should sustain Mr. Smith's ADA claim (Claim V) against Defendant Wright.

**INTRODUCTION**

Title II of the ADA protects Mr. Smith—and all individuals like him, who have ADA-qualifying disabilities—from precisely the type of unequal treatment that he received in Defendant Wright's courthouse. Mr. Smith alleges that, upon his arrival to Judge Wright's office for a bond hearing, Wright denied him bond and subjected him to inequitable treatment on the basis of Mr. Smith's disability and Wright's perception of Mr. Smith's disability.

Defendant Wright does not contest that Mr. Smith is a qualifying individual with a disability, nor does he challenge that federal law entitles Mr. Smith to equitable treatment in Virginia's judiciary. Instead, Wright invokes an incorrect statute of limitations to argue that Mr. Smith's claim is time-barred, and relies on judicial immunity—which categorically does not shield defendants named in their official capacities—to escape the merits of Mr. Smith's allegations.

1

Neither defense is availing. Mr. Smith has plausibly and timely alleged an ADA claim against Defendant Wright and is entitled to proceed to discovery on his claim.

## STANDARD OF REVIEW

When ruling on a motion brought pursuant to Rule 12(b)(6), this Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). While "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.* A Rule 12(b)(6) motion to dismiss "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). This Court's standard of review for a motion pursuant to Rule 12(b)(1) is "similar." *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir.1999). Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

## ARGUMENT

**I.     Mr. Smith has Plausibly Alleged an ADA Violation against Defendant Wright**

Mr. Smith has plausibly and properly alleged an ADA violation against Defendant Wright because (A) Mr. Smith's allegations, taken as true, state a valid ADA claim against Defendant Wright, and (B) Mr. Smith's ADA claim is timely under the Americans with Disabilities Amendments Act of 2008 ("ADA Amendments Act" or "ADAAA") statute of limitations.

    **A.     Taken as True, Mr. Smith's Complaint States an ADA Claim against Defendant Wright**

Defendant Wright does not contest—and, therefore, concedes—that Mr. Smith has stated a meritorious claim for a violation of the ADA. *See* ECF No. 86 at p. 3. Mr. Smith has alleged that

he has an ADA-qualifying disability (¶¶ 48–49, 86, 220);[1] that Defendant Wright, as a "magistrate judge and officer of the unified judicial system of the Commonwealth of Virginia," (¶ 16), perceived Mr. Smith to have a disability (¶ 87); and that, because of that perception and disability, Defendant Wright excluded Mr. Smith from participation in and denied him the benefits of the services of Virginia's judiciary (¶¶ 16, 62, 68, 82–85, 87–88, 215–228); *see* 42 U.S.C. § 12132.

Taken as true, Mr. Smith's allegations demonstrate that Defendant Wright failed to administer nondiscriminatory judicial services and provide Mr. Smith with equal access to his courtroom in violation Title II of the ADA. Specifically, Mr. Smith has alleged that on or around May 3, 2020, he was experiencing a medical emergency connected to his disability (¶¶ 35, 220) that caused him enormous amounts of pain (¶¶ 38, 39, 44, 46, 51, 58, 80–82), limited his control over his legs (¶¶ 45, 50, 52, 58, 71, 86, 88), and prevented him from walking and speaking (¶¶ 37–39, 71). During the course of Mr. Smith's experience of these debilitating symptoms and his visit to the emergency department of Twin County Regional Healthcare, the police were called (¶ 61), and—because of a five-year-old outstanding, nonviolent probation violation (¶¶ 62–63)—Mr. Smith was transported to Defendant Wright's office for a late-night bond hearing, in the midst of his medical emergency (¶ 68). Mr. Smith was brought before Judge Wright by deputies and officers who were "frequently referring to [Mr. Smith's] substance use disorder to influence the judge's view" (¶ 83).

Mr. Smith alleges that, upon arrival to Defendant Wright's office, Wright's perception regarding Mr. Smith's disability controlled his treatment of Mr. Smith and the outcome of Mr. Smith's bond hearing. Wright denied Mr. Smith bond *because* Mr. Smith was temporarily unable

---

[1] Citations indicated with a paragraph symbol throughout this Opposition are to Plaintiff's First Amended Complaint, ECF No. 30.

3

to stand due to his disability (¶¶ 85–87). Instead of conducting the full and fair bond hearing that an able-bodied individual might have received, Defendant Wright forced Mr. Smith to lie on the floor for the duration of the bond hearing (¶¶ 223–24), told Mr. Smith that he believed he was "faking this" and a "junkie" (¶ 87), and then summarily denied him bail (¶ 89). Judge Wright explicitly conditioned Mr. Smith's freedom on his ability to "stand up and talk to [him] like a man" (¶ 85), despite Mr. Smith's physical incapacitation. In doing so, Defendant Wright abdicated his and the Virginia judiciary's obligation to prevent the "unequal treatment of disabled persons in the administration of judicial services." *See Tennessee v. Lane*, 541 U.S. 509, 531 (2004); *see also id.* at 515 (explaining that Title II sought to undermine the "unconstitutional animus and impermissible stereotypes" motivating the discriminatory treatment of individuals with disabilities). Mr. Smith has plausibly alleged that Defendant Wright failed to comply with his obligations under the ADA, and that as a direct result, discrimination occurred (¶¶ 14, 227); *see Donaldson v. Trae-Fuels, LLC*, 399 F. Supp. 3d 555, 558–59 (W.D. Va. 2019) (The ADA Amendments Act's "implementing regulations clarify that '[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred.'") (citing 29 C.F.R. § 1630.1(c)(4)).

      Rather than contest the merits of these allegations, Defendant Wright's substantive argument recasts Plaintiff's ADA claim as one of a defect in "courthouse facilities," incorrectly narrowing the scope of the claim to issues such as "furniture and other equipment" in magistrates' offices. ECF No. 86 at p. 14. But Mr. Smith does not allege that he was literally denied entry to the courthouse, nor does he contend that his discrimination could have been avoided if Carroll County, as the "fee simple" titleholder for the offices of Magistrate judges, provided more "suitable quarters," as Defendant Wright suggests. *See id.* Mr. Smith's ADA claim does not

concern courthouse facilities themselves—i.e., whether Carroll County has sufficient chairs, "equipment," or physical accommodations for disabled individuals—it concerns unequal *treatment* in the administration of judicial services on the basis of disability. Defendant Wright's attempt to shift blame to Carroll County, then, does not absolve him of liability. Mr. Smith's allegations turn on the ADA's instruction that "if a person is disabled and otherwise qualified, the state must ensure that the person is not denied the benefits of services, activities, or programs because of his or her disability." *See, e.g.*, *Zemedagegehu v. Arthur*, No. 1:15CV57, 2015 WL 1930539, at *7 (E.D. Va. Apr. 28, 2015). Regardless of Mr. Smith's physical access to the courthouse, once inside, he was denied the benefits of services and programs of the courthouse—i.e., a fair bond hearing—on the basis of his disability and on the basis of Defendant Wright's perception of his disability.

**B.  Mr. Smith's Claim is Timely because it is Subject to a Four-Year Statute of Limitations**

Mr. Smith's disability discrimination claims are made possible by the Americans with Disabilities Amendments Act of 2008 ("2008 Amendments" or "ADAAA"), and thus the four-year statute of limitations applies. *Latson v. Clarke*, No. 1:16cv00039, 2017 WL 3098124, at *1 ("If [plaintiff's] claim was made possible by the ADA Amendments Act rather than the pre-amendment ADA, then he can invoke the four-year statute of limitations."). Importantly, the relevant question is not whether the 2008 Amendments recognized the claimed disability as a *newly recognized* form of disability, but rather whether the 2008 Amendments made the *legal claim* newly possible under judicial review. *See, e.g.*, *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 385 n. 18 (2004) ("In such cases, courts will have to determine whether the amendment clarified existing law or created new rights and liabilities."); *Millay v. Maine Dep't of Lab., Bureau of Rehab., Div. for Blind & Visually Impaired*, 762 F.3d 152, 155 (1st Cir. 2014) ("What matters

is the substantive effect of an enactment. . . . [t]he linchpin of the inquiry, then, is whether the enactment 'made possible' the plaintiff's cause of action.") (internal citations omitted).

The crux of the disability discrimination allegations against Defendant Wright are that Mr. Smith was *regarded as* having a substance abuse disorder—or in Defendant Wright's words, Mr. Smith was regarded as "a junkie" (¶ 87)—and thus Defendant Wright denied Mr. Smith access to a fair bond hearing (¶¶ 84–87). Prior to the 2008 Amendments and under the Supreme Court's interpretation of ADA claims in *Sutton v. United Air Lines,* an individual was "regarded as" having a disability only if the defendant "either mistakenly believes that []he has a physical impairment that substantially limits one or more major life activities, or that an actual, nonlimiting impairment substantially limits one or more major life activities." 527 U.S. 471, 489 (1999) (internal quotations omitted). The 2008 Amendments explicitly sought to "reject the Supreme Court's reasoning in *Sutton*" because *Sutton* had "narrowed the broad scope of protection intended to be afforded by the ADA." ADA Amendments Act of 2008, PL 110–325, September 25, 2008, 122 Stat 3553. Instead, under the 2008 Amendments, an individual is "regarded as" having a disability "if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity.*" *Id.* § (a)(3)(A) (emphasis added). Defendant Wright assails Mr. Smith for not pleading a substantial limitation of major life activities against Wright, *see* ECF No. 86 at p. 11, seemingly failing to recognize that he is making a pre-2008 Amendments argument. Mr. Smith need not show that Wright perceived him as having an impairment of a "major life activity"; only that he was discriminated against due to "perceived physical or mental impairment." *See id.* Defendant Wright's own argument belies the fact that Mr. Smith's legal cause of action was made possible by the 2008 Amendments and the abrogation of

6

*Sutton*. Because the 2008 Amendments explicitly made possible a legal claim where a plaintiff is regarded as having a mental impairment—without imposing the requirement that the Plaintiff show that the impairment was regarded as limiting "a major life activity"—Mr. Smith's legal claim against Defendant Wright was made possible by the 2008 Amendments.

Mr. Smith has adequately alleged that Defendant Wright denied him access to a fair and impartial bond hearing because CCSO deputies "influence[d] the judge's] view" about Mr. Smith's "substance abuse disorder," a qualifying disability under the ADA (¶¶ 82, 87); *see also* 42 U.S.C. §12102. This is enough to state a plausible claim under the post-*Sutton* 2008 Amendments. Mr. Smith alleges that Defendant Wright regarded him as an individual with a physical or mental impairment; *not* that Defendant Wright interpreted that impairment to substantially limit Mr. Smith's major life activity. Indeed, Mr. Smith's factual allegations—that Defendant Wright demanded he stand (¶ 85), told him "we know you're faking this" (¶ 87) and "called him a 'junkie'" (¶ 87)—go only so far as to state that Wright deprived Mr. Smith of a fair bond hearing based on a "perceived physical or mental impairment" of substance abuse disorder (being a junkie), and *not* because he drew the conclusion that Mr. Smith's major life activity (such as standing) was impaired. Prior to the 2008 Amendments, this type of claim would fail under *Sutton* and its progeny. Because "the [2008 ADA] amendment clarified existing law" regarding the circumstances under which an individual is "regarded as" having a disability, Mr. Smith's ADA claim was made possible by the 2008 Amendments and the four-year statute of limitations applies. *See Jones*, 541 U.S. at 385.

Defendant Wright's analysis of Mr. Smith's ADA claim goes no further than pointing out that drug addiction was a recognized disability under the 1990 ADA—a facile analysis that not only ignores the factual particularities of Mr. Smith's allegations against Defendant Wright, but

also ignores that, prior to the 2008 Amendments, Mr. Smith's legal claim would have been precluded under the two Supreme Court cases that the 2008 Amendments were enacted to explicitly reject. *See Dave v. Lanier*, 606 F. Supp. 2d 45, 49 (D.D.C. 2009) ("[S]pecifically, the Act expressly disavows the Supreme Court's interpretation of the ADA in two leading cases, *Sutton v. United Air Lines, Inc.* and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams* . . . [in part because] *Sutton* too narrowly limited the interpretation of 'regarded as' disabled") (internal citations omitted); *Wilson v. Dollar Gen. Corp.*, 122 F. Supp. 3d 460, 465 n. 2 (W.D. Va. 2015) ("In the ADA Amendments Act of 2008 ["ADAAA"], Congress rejected the limiting interpretation of the term 'substantially limits' in *Sutton*."). The crux of Mr. Smith's claim is that he was *regarded as* disabled by Defendant Wright—a claim made possible only by Congressional abrogation of *Sutton*, and thus his ADA claim was made possible by the 2008 Amendments.

Moreover, the implementing regulations of the 2008 Amendments have now made explicit that addiction is a disability under the ADA. *See* 28 C.F.R. § 35.108(a)(1) § 35.108(b)(2) (stating that "physical or mental impairment" includes "drug addiction"). The ADAAA made clear that impairments that are "episodic" or "in remission"—like substance-abuse disorders—can still qualify as "disabilities" under the ADA if they "substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). Notably, the "episodic" signs of disability used to discriminate against Mr. Smith during his bond hearing, including compromised cognition and inability to stand (¶¶ 75, 82, 86–87), were exactly this type of impairment: while not present in Mr. Smith at all times or while he was "in remission," they were "episodic" in nature.

Congress "broadened the definition of 'disability' by enacting the ADA Amendments Act of 2008," and its principal purpose is "to make it easier for people with disabilities to obtain protection under the ADA." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir.

8

2015) (internal citation and quotations omitted); *see also, e.g., Williams v. Kincaid*, 45 F.4th 759, 766 (4th Cir. 2022) ("[B]ecause the 2008 amendments to the ADA were intended to make it easier for people with disabilities to obtain protection under the ADA, courts must construe the ADA's exclusions narrowly.") (internal quotation marks and citations omitted); *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) ("[R]emedial legislation should be construed broadly to effectuate its purposes."); *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731-32 (1995) ("[A]n exception to 'a general statement of policy' is sensibly read 'narrowly in order to preserve the primary operation of the [policy].'") (citation omitted). Recognition of Mr. Smith's claim as falling within the broadened definition of "disability" made possible by the 2008 Amendments—including abrogation of *Sutton*—not only comports with the requirement to draw all reasonable inferences in favor of the Plaintiff at the pre-discovery phase of litigation, but also effectuates Congress's purpose in expanding ADA protections through the 2008 Amendments. *See Jacobs*, 780 F.3d at 572; *see also Loc. Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) (stating that exceptions to remedial legislation should be "construed narrowly"). Mr. Smith has stated a claim under a post-2008 Amendments analysis and the four-year statute of limitations applies to his claim.

## II.  Defendant Wright Cannot Assert Judicial Immunity to Preclude ADA Liability

The doctrine of judicial immunity does not preclude Mr. Smith's ADA claim against Defendant Wright because (A) judicial immunity does not apply to suits against individuals acting in their official capacities, and (B) even if judicial immunity applies to such suits, Defendant Wright's actions place him outside of the protections of judicial immunity. Defendant Wright thus cannot invoke judicial immunity to prevent adjudication of Mr. Smith's disability discrimination claim against him.

### A. Absolute Judicial Immunity Does Not Apply to Official-Capacity ADA Claims

Mr. Smith brings his ADA claim against Defendant Wright in his official capacity (¶¶ 16, 216), and judicial immunity does not shield defendants named in their official capacities. Applying judicial immunity to protect defendants in Title II ADA claims would effectively rescind the congressional waiver of state sovereign immunity that renders these claims cognizable. A Title II ADA claim against Defendant Wright in his official capacity is functionally a claim against the Commonwealth of Virginia. *See, e.g., Fauconier v. Clarke*, 966 F.3d 265, 279 (4th Cir. 2020) ("[B]ecause a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office, it is no different from a suit against the State itself.") (internal quotation marks omitted); *Sims v. Marano*, No. 7:18-CV-00014, 2020 WL 591566, at *4 (W.D. Va. Feb. 6, 2020) (recognizing that the proper defendant under a Title II claim is the public entity or an official acting in his official capacity). Therefore, the "only immunities" available to Judge Wright, as the defendant in an "official-capacity action, are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

Congress has already waived the sovereign immunity that would normally protect the Commonwealth from a suit challenging discriminatory access and treatment in its courtrooms. *See* 42 U.S.C. § 12202. Analyzing the constitutionality of the congressional waiver, the Supreme Court concluded that it was valid explicitly as applied to ADA claims, like Mr. Smith's, that "implicat[e] the fundamental right of access to the courts." *Lane*, 541 U.S. at 533–34. Extending judicial immunity to protect judges, clerks, and other judicial employees in their *official* capacities would effectively extend judicial immunity to the Commonwealth itself and undo the congressional waiver of sovereign immunity in the ADA. Such a result would not only entirely undermine Virginia's federal obligation to "accommodate persons with disabilities in the administration of

justice," *id.* at 524–25, it would, for the first time, take the extraordinary step of extending an immunity fashioned for individuals, in their personal capacities, to an entire state.[2]

Recognizing the consequences of immunizing state-court and judicial employees in official-capacity ADA claims, courts have held that Defendant's argument would render inoperable the ADA protections envisioned in Title II. The Western District of Pennsylvania, in declining to apply judicial immunity to an ADA suit against the Administrative Office of Pennsylvania Courts, emphasized that the "ADA's focus on equal access to public services would be rendered toothless if every state agency could derivatively claim quasi-judicial immunity and avoid its obligation to ensure equal access to [a] courtroom." *Geness v. Pennsylvania*, 388 F. Supp. 3d 530, 537–38 (W.D. Pa. 2019), rev'd and remanded sub nom. on other grounds, *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263 (3d Cir. 2020). Defendant Wright's invocation of judicial immunity here would similarly allow the Commonwealth to "derivatively claim quasi-judicial immunity," *id.*, and skirt the public-access ADA obligations imposed by federal law.

Several circuit courts have concluded the same, and refused to immunize judicial bodies and employees from ADA suits. *See, e.g.*, *DeVito v. Chicago Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996) (holding that a "quasijudicial body" was not immune from suit under the ADA because "[t]he only immunities available in an official capacity suit are those that may be asserted by the governmental entity itself"); *Smith v. Glanz*, 662 Fed. Appx. 595, 597 (10th Cir. 2016) ("[T]he issue of judicial immunity simply never arises because no individual, including a state court judge,

---

[2] The Supreme Court considered an analogous question in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and concluded that municipal bodies "cannot be entitled to an absolute immunity" because shielding municipalities from suit would "drain[]" section 1983 "of meaning." *Id.* at 701. Allowing judicial employees named in their official capacities to invoke judicial immunity would similarly drain the public-entity Title II protections of meaning.

11

may be held liable under Title II of the ADA"); *Badillo v. Thorpe*, 158 Fed. Appx. 208, 211 (11th Cir. 2005) ("[T]here is no individual capacity liability under Title II of the ADA[.]").

District courts have similarly held that because judicial immunity is an entirely personal defense, "reserved for individuals," it does not shield official-capacity judicial defendants. *See Prakel v. Indiana*, 100 F. Supp. 3d 661, 677–78 (S.D. Ind. 2015) (holding that judicial immunity did not shield three judges named in their official capacities); *Novak v. Hall*, 139 F. Supp. 3d 901, 908 (N.D. Ill. 2015) (concluding that "judicial immunity does not appear to bar" ADA claims against a judge because "judicial immunity bars only those claims brought against judges in their individual capacities and Plaintiff asserts claims against [the Defendants] . . . in their official capacities") (internal quotation marks omitted; alterations in original); *Guttman v. Khalsa*, No. CV 03-0463, 2007 WL 9710114, at *8 (D.N.M. June 4, 2007) (refusing to "extend the defense of absolute quasi-judicial immunity to the State for purposes of [an] ADA claim"); *Doherty v. Bice*, No. 18-CV-10898, 2020 WL 5548790, at *10 (S.D.N.Y. Sept. 16, 2020) (dismissing with prejudice the claims against the defendants in their individual capacities pursuant to Title II of the ADA because that statute does not "provid[e] for individual capacity suits against state officials," but allowing action to proceed against defendants in official capacities); *Tavernier v. Colorado State Bd. of Nursing*, No. 16-CV-02086, 2017 WL 1242995, at *9 n.9 (D. Colo. Mar. 17, 2017) ("As such, quasi-judicial immunity also is inapplicable to Plaintiff's Title II ADA claim, which . . . may not be brought against Individual Defendants in their personal capacities"); *Terpening v. McGinty*, No. 121CV1215GTSCFH, 2022 WL 2657291, at *5 (N.D.N.Y. Apr. 28, 2022), report and recommendation adopted, No. 121CV1215GTSCFH, 2022 WL 2115265 (N.D.N.Y. June 13, 2022) (dismissing an ADA claim "to the extent plaintiff attempts to bring his action against Judge

12

McGinty in his individual capacity," but allowing it to proceed against the judge in his official capacity).

The history and genesis of the judicial-immunity doctrine further makes clear that, like qualified immunity, it was intended and developed to shield judges only from *personal* liability, which is inapplicable to Defendant Wright in this action. The modern judicial immunity doctrine originates from *Bradley v. Fisher*, 80 U.S. 335 (1871), which reasoned that judicial immunity from damages allows judges to "act upon [their] own convictions, without apprehension of *personal consequences*," *id.* at 374 (emphasis added). The first Supreme Court case to extend judicial immunity to federal civil-rights suits,[3] *Pierson v. Ray*, 386 U.S. 547 (1967), involved a suit under 42 U.S.C. § 1983 against a judge and law-enforcement officers. The Court described judicial immunity as a shield for personal liability, concluding that the doctrine was necessary for judges to "exercise their functions with independence . . . without fear of consequences," and engage in "principled and fearless decisionmaking," *id.* at 554 (internal quotation marks omitted). In the same case, the Court held for the first time that law enforcement officials were entitled to qualified immunity from suit. *See id.* at 555. Later Supreme Court cases developed the rationale underlying immunities doctrines, and reiterated that they are designed to protect government officials from the "threat of damages." *Wyatt v. Cole*, 504 U.S. 158, 167 (1992). It is now well-settled that because plaintiffs in official-capacity actions "recover damages from the entity itself," rather than "the official's personal assets," *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000), qualified immunity does not protect defendants named in their official capacities. *Cf. Richardson v. McKnight*, 521 U.S. 399, 411 (1997); *Monell*, 436 U.S. at 699. So too here. An official-capacity

---

[3] *See* Robert Craig Waters, *Judicial Immunity vs. Due Process: When Should a Judge Be Subject to Suit?* 7 Cato J. 461, 461 n.1 (1987).

action against Defendant Wright does not implicate personal concerns or consequences, simply because Mr. Smith will eventually recover from the "entity itself," *see Andrews*, 201 at 535, i.e., the Commonwealth itself, and Defendant Wright will not be exposed to personal liability. *See Bradley*, 80 U.S. at 374; *Pierson*, 386 U.S. at 554.

The same is true in the section 1983 context. Courts analyzing section 1983 claims against judicial defendants have followed the personal-official capacity delineation and concluded that judicial immunity does not extend to them.[4] *See e.g., Vanhorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007) ("[A]bsolute, quasi-judicial immunity is not available for defendants sued in their official capacities."); *Turner v. Houma Mun. Fire & Police*, 229 F.3d 478, 483 (5th Cir. 2000) ("[D]efenses such as absolute quasi-judicial immunity, that only protect individuals in their individual capacities, are unavailable in official capacity suits."); *Alkire v. Irving,* 330 F.3d 802, 810–11 (6th Cir.2003) ("Additionally, as a result of being sued only in their official capacities, Sheriff Zimmerly and Judge Irving cannot claim any personal immunities, such as quasi-judicial or qualified immunity, to which they might be entitled if sued in their individual or personal capacities."); *Lonzetta Trucking & Excavating Co. v. Schan*, 144 Fed. Appx. 206, 210–211 (3d

---

[4] The Supreme Court developed the judicial-immunity doctrine through the context of section 1983 litigation, *see, e.g., Stump v. Sparkman*, 435 U.S. 349 (1978); *Pulliam v. Allen*, 466 U.S. 522 (1984); *Forrester v. White*, 484 U.S. 219 (1988); *Mireles v. Waco*, 502 U.S. 9 (1991), but other courts apply the Court's 1983 judicial-immunity framework to claims arising from other causes of action, including claims arising under the ADA. Indeed, *all* of the cases on which Defendant relies directly cite to and rely on 1983 judicial-immunity cases in their analyses. *See* ECF No. 86 at p. 7–9 (citing *Livingston v. Guice*, 68 F.3d 460, at *3 (1995) (unpublished table decision); *Cannady v. Hogan*, No. JKB-21-0869, 2021 WL 2875509, at *3-4 (D. Md. July 8, 2021); *Fuller v. Holt*, No. 5:18-cv-00059, 2018 WL 11207482, at *4 (E.D.N.C. Nov. 21, 2018); *Green v. North Carolina*, No. 4:08-cv-135, 2010 WL 3743767, at *3 (E.D.N.C. Sept. 21, 2010); *Lund v. Cowan*, 5 F.4th 964, 971-94 (9th Cir. 2021); *Gross v. Rell*, 585 F.3d 72, 83 (2d Cir. 2009); *Marshall v. N.Y. State Pub. High Sch. Ath. Ass'n*, 374 F. Supp. 3d 276, 291 (W.D.N.Y. 2019); *Updike v. City of Gresham*, 62 F. Supp. 3d 1205, 1213 (D. Or. 2014)*; Del-Villar-Rosario v. P.R. DOJ,* 573 F. Supp. 2d 496, 500 (D.P.R. 2008)).

Cir. 2005) (unpublished) (concluding that zoning officials performing quasi-judicial functions "would be entitled to absolute immunity in their individual capacities if they were performing 'quasi-judicial' functions. . . However, the zoning officials in their official capacities . . . are not entitled to absolute immunity."). Notably, Defendant cites no published authority in this Circuit, and no published authority at all in this Court, that holds that judicial immunity applies to official-capacity ADA claims. *See* ECF No. 86 at p. 7–8.

Extending judicial immunity to Defendant Wright in his official capacity would allow the Commonwealth to invoke a personal immunity to shield itself from meritorious actions designed to prevent the "pattern of disability discrimination" that has "persisted despite several federal and state legislative efforts to address it." *Lane*, 541 U.S. at 526. Neither the Commonwealth nor Defendant Wright is entitled to judicial immunity.[5]

### B. Even if Judicial Immunity Applies, Defendant Wright Engaged in Nonjudicial Acts and is Not Entitled to Judicial Immunity

Even if this Court concludes that absolute judicial immunity bars claims that are functionally against the state—an extraordinary extension of judicial immunity that has not been sanctioned by any court in this circuit—Defendant Wright is not entitled to its protections. Once a court concludes that judicial immunity applies to a particular claim, it uses a two-prong framework to evaluate whether a judge's particular actions have placed them outside of its scope. Judges and judicial employees are not entitled to immunity (1) "for nonjudicial actions," i.e., adjudicative, rather than administrative, legislative, or executive actions, or (2) "for actions, though judicial in

---

[5] For the same reason, judicial immunity does not preclude Mr. Smith's request for prospective injunctive relief against Defendant Wright. *See* 28 C.F.R. § 35.178 ("In any action against a State for a violation of the requirements of [Title II of the ADA], remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.").

nature, taken in the complete absence of all jurisdiction," *Mireles*, 502 U.S. at 12 (citations omitted).

In denying Mr. Smith access to judicial services and facilities because of his disability, Defendant Wright engaged in nonjudicial acts. Whether a judge engaged in nonjudicial acts depends on whether the "nature" and "function" of the actions in question were outside of those "normally performed" by a judge, *id.* at 13 (internal quotation marks omitted). Not only are Defendant Wright's discriminatory actions outside of those "normally performed" by a judge, Defendant Wright's actions entirely run *counter* to the actions that a Virginia magistrate judge is expected to perform. *See* Virginia's Judicial System, *Magistrate Services*, http://www.vacourts.gov/courtadmin/aoc/mag/about.html (last visited Sept. 21, 2022)[6] (explaining that Virginia's magistrate judges are "principal[ly]" responsible for "provid[ing] an independent, unbiased review of complaints of criminal conduct," and further responsible for "issuing" "arrest warrants, summonses, search warrants, emergency protective orders, emergency custody orders, and certain civil warrants"; "conduct[ing] bail hearings in instances in which an individual is arrested to determine under what conditions the arrestee should be released from custody prior to trial"). By conditioning Mr. Smith's bail hearing on his disability, *see supra* § I.A., Defendant Wright entirely failed to "provide an independent, unbiased review" or evaluate "the conditions" under which Mr. Smith should or could be released from custody, *see id.*, and instead

---

[6] This Court may take judicial notice of the Virginia judiciary's website pursuant to Federal Rule of Evidence 201(b). *See e.g., Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 Fed. Appx. 223, 227 (4th Cir. 2013) (stating that "[a] court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and 'it is capable of accurate and ready determination'") (quoting Fed. R. Evid. 201(b)); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (affirming district court's judicial notice of facts stated on government website and reasoning, "the [United States Citizenship and Immigration Services] website is a source whose accuracy cannot reasonably be questioned").

focused the bond determination on whether Mr. Smith could overcome his disability at Defendant Wright's whims. Conditioning the outcome of a judicial proceeding on an individual's federally protected trait is not, by its "nature," a judicial act, and its "function" does not facilitate the completion of Defendant Wright's judicial responsibilities. *See Mireles*, 502 U.S. at 13; *see also, e.g., Forrester*, 484 U.S. at 546 (affirming the denial of judicial immunity to a judge who demoted and discharged an individual because the action was taken in the judge's administrative capacity, and could not "meaningfully be distinguished" from actions taken by other individuals responsible for employment decisions); *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36, (1993) (stating that the "touchstone" for judicial immunity's applicability is the judge's "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights") (internal quotation marks omitted). That Defendant Wright was physically standing in his courthouse at the time that he engaged in the discriminatory conduct Mr. Smith alleges does not render the nature of his actions judicial. Much like a judge who deliberately misleads police officers regarding the identity of a person named in an arrest warrant, *see King v. Love*, 766 F.2d 962, 968 (1985), or a judge who uses physical force to evict someone from their courtroom, *see Gregory v. Thompson*, 500 F.2d 59, 64–65 (9th Cir. 1974), Defendant Wright's actions place him outside the scope of those a judge is expected to perform in the normal course of his duties.

Mr. Smith has no other recourse for Defendant Wright's actions. Even if Mr. Smith may appeal the outcome of his bond determination, he cannot seek relief for Wright's discriminatory treatment of him through the normal course of "appellate correction." *Id.* at 64. And the "purpose of the judicial immunity doctrine—to promote 'principled and fearless decision-making' will [not] suffer in the slightest if it is held that judges who" discriminate against litigants on the basis of disability "have no automatic immunity." *Id*. Because Defendant Wright's discriminatory

treatment of Mr. Smith falls well outside of the actions normally performed by a sitting magistrate judge, he is not entitled to judicial immunity.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Wright's Motion to Dismiss.

Dated: September 23, 2022                                Respectfully submitted,

                                                                                */s/Aderson Francois*
Aderson Francois (D.C. Bar No. 498544)
(*pro hac vice)*
Lucia Goin (D.C. Bar. No. 1739389)
(*pro hac vice*)
Marissa K. Hatton (D.C. Bar No. 219291)
(*pro hac vice*)
CIVIL RIGHTS CLINIC
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue NW, Suite 352
Washington, DC 20001
(202) 661-6721
(202) 662-9546
Aderson.Francois@georgetown.edu
Lucia.Goin@georgetown.edu
Marissa.Hatton@georgetown.edu

*/s/ Joshua Erlich*
Joshua Erlich (VSB No. 81298)
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd. #700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email:jerlich@erlichlawofice.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23 2022, I filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide copies to all counsel of record who have entered appearances. As all parties have not yet been served with process, service was not completed on all parties.

*/s/ Lucia Goin*

Counsel for Plaintiff