**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Roanoke Division**

| | |
|---|---|
| JOSHUA LEE SMITH, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) **Case No. 7:22-cv-00238 (EKD)** |
| TWIN COUNTY REGIONAL HEALTHCARE, | ) |
| *et al.,* | ) |
| *Defendants,* | ) |
| | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS
## JAMES HOOSIER AND CHRISTOPHER WILLARD'S
## MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Plaintiff Joshua Lee Smith ("Plaintiff" or "Mr. Smith") opposes Defendant James

Hoosier and Christopher Willard's Motion to Dismiss and for Summary Judgment as follows:


## INTRODUCTION

Defendants James Hoosier ("Hoosier") and Christopher Willard ("Willard"; collectively,

"Defendants") are not entitled to either a dismissal of claims or judgment in their favor. Mr.

Smith's Second Amended Complaint plausibly alleges Defendants' violation of his due process

rights, and these claims are timely brought by virtue of their relation back to the date of his original

Complaint. Defendants' actions violated Mr. Smith's clearly established constitutional rights. As

such, Defendants are not entitled to qualified immunity and his claims against Defendants should

not be dismissed on these grounds.

Mr. Smith's Second Amended Complaint states claims against Defendants for violation of

both his due process rights arising from (1) Defendants having shackled Mr. Smith to his hospital

bed, contrary to medical advice, for a period of at least six (6) days; and (2) Defendants' insistence on Mr. Smith's participation in a bond hearing while shackled and unable to communicate verbally with the magistrate judge who conducted the hearing. Mr. Smith concedes the portion of his due process claims against Defendants arising from the procedural defects in his bond hearing, but opposes the dismissal of his claims against Defendants based on the violation of his liberty interest to be free from bodily restraint in the days leading up to – and during – said hearing.

## STATEMENT OF FACTS

On or about May 2, 2020, Mr. Smith experienced a medical emergency and collapsed on the floor while vising his family. 2d. Am. Compl. ¶¶ 33, 36; Compl. ¶¶ 33-39. Mr. Smith's family called 911 and Mr. Smith was transported via ambulance to the emergency room at Twin County Regional Healthcare in Galax, Virginia. 2d. Am. Compl. ¶¶ 37-39; Compl. ¶¶ 33-39. Mr. Smith could not stand or walk. 2d. Am. Compl. ¶ 38; Compl. ¶ 38.

Hospital personnel accused Mr. Smith of drug-seeking behavior and coordinated with the Carroll County Sheriff's Office to have Mr. Smith removed from the hospital. 2d. Am. Compl. ¶¶ 44-47, 57; Compl. ¶¶ 44-47, 50. Sheriff's deputies ran Mr. Smith's background history and determined he had an outstanding charge from 2015 for failure to appear in violation of his probation. 2d. Am. Compl. ¶¶ 57-58; Compl. ¶¶ 51-53. This probation arose from Mr. Smith's pre-2015 conviction for a nonviolent offense. 2d. Am. Compl. ¶ 59; Compl. ¶¶ 51-53.

Carroll County Sheriff's Office deputies arrived and physically dragged Mr. Smith from the hospital. 2d. Am. Compl. ¶ 62; Compl. ¶ 53. The deputies transported Mr. Smith to the magistrate office, where he continued to plead for medical assistance, still unable to remain standing. 2d. Am. Compl. ¶¶ 65-87; Compl. ¶¶ 56-78. The deputies met Mr. Smith's cries for help

with hostility and handled him with excessive physical force despite his obvious medical emergency and his inability to remain standing. 2d. Am. Compl. ¶¶ 65-87; Compl. ¶¶ 56-78.

The Deputies transported Mr. Smith to the New River Valley Regional Jail in Dublin, Virginia. 2d. Am. Compl. ¶¶ 87-109; Compl. ¶¶ 79-101. Mr. Smith lost consciousness at the jail and was eventually transported to Carilion Roanoke Memorial Hospital ("Roanoke Hospital"). 2d. Am. Compl. ¶¶ 118-131; Compl. ¶¶ 102-114. There, on or about May 3, 2020, Defendants Hoosier and Willard were assigned responsibility for monitoring Mr. Smith while he remained hospitalized. 2d. Am. Compl. ¶ 21; Compl. ¶ 24.

Mr. Smith awoke from emergency surgery at Roanoke Hospital to discover he had become paralyzed from the chest down. 2d. Am. Compl. ¶¶ 132-133; Compl. ¶¶ 115-116. Mr. Smith alleged that he could not communicate verbally due to being intubated and could not move due to having been shackled to his hospital bed. 2d. Am. Compl. ¶¶ 132-133; Compl. ¶¶ 115-116.

Nurses at Roanoke Hospital asked that the shackles be removed from Mr. Smith on more than one occasion and complained the restraints impeded their ability to provide Mr. Smith medical care. 2d. Am. Compl. ¶¶ 132-133; Compl. ¶¶ 115-116. Defendants Hoosier and Willard refused to remove the shackles from Mr. Smith, and he remained shackled to his bed for at least six (6) days at all times while not actively undergoing surgery. 2d. Am. Compl. ¶¶ 132-134, 201; Compl. ¶¶ 115-118. Mr. Smith remained on a ventilator, unable to speak and under heavy sedation throughout this time. 2d. Am. Compl. ¶¶ 134, 201; Compl. ¶ 115-118.

## STANDARD OF REVIEW

### *Motion to Dismiss Pursuant to Rule 12(b)(6)*

When ruling on a motion brought pursuant to Rule 12(b)(6), this Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in

3

favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). While "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.* (internal quotation marks and citation omitted). A Rule 12(b)(6) motion to dismiss "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (internal quotation marks and citations omitted).

### *Motion for Summary Judgment Pursuant to Rule 56(a)*

When ruling on a Motion for Summary Judgment, Rule 56 provides that a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022) (internal quotation marks omitted) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

Ultimately, unless the court can determine that the evidence "is so one-sided that [the moving] party must prevail as a matter of law," the case must go to the jury. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. In making this determination, the court must "view the evidence in the light most favorable to the plaintiff;" and "draw all reasonable inferences in his favor." *Stanton v. Elliott*, 25 F.4th 227, 234 (4th Cir. 2022). The Court must "not weigh the evidence or make credibility calls, even if we do not believe he will win at trial." *Id*.

"Courts should be careful at summary judgment to avoid simply accepting an officer's self-serving statements and must consider all contradictory evidence." *Id*. (citing *Ingle ex rel. Est. of*

*Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)); *see also Brown ex rel. Lawhorn v. Elliott*, 876 F.3d 637, 641 (4th Cir. 2017) (emphasizing "the importance of drawing inferences in favor of the nonmovant, even when ... a court decides only the clearly-established prong" (quoting *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014)).

## ARGUMENT

The Court should deny Defendant Hoosier and Willard's Motion to Dismiss and Motion for Summary Judgment because Mr. Smith's claims alleged against them relates back to the date of his Original Complaint and are therefore timely filed. Mr. Smith has plausibly alleged Defendants' violation of his due process rights. Defendants violated Mr. Smith's constitutional rights through actions clearly established to constitute such a violation and are not entitled to qualified immunity.

The exhibits attached to Defendants' motion are external to Mr. Smith's pleading, and this Court should decline to consider these documents in either its analysis of the sufficiency of Mr. Smith's pleadings or in its determination on Defendants entitlement to qualified immunity.[1] Defendants' motion is styled as a motion to dismiss in all other regards and does not contain a separately captioned section of material facts as required of a motion for summary judgment pursuant to the local rules of this Court. W.D. Va. Local Ct. R. 56. These arguments are most properly reviewed under the standard applicable to motions to dismiss under Rule 12(b)(6) and their analysis should be limited to the substance of the factual allegations in Mr. Smith's pleadings. Fed. R. Civ. P. 12(b)(6).

---

[1] These arguments are made in Sections II and IV of Defendants' motion.

I.    **Mr. Smith's Claims against Officers Hoosier and Willard Are Timely As They Relate Back to the Date of the Original Complaint.**

Mr. Smith's due process claims against Defendants are timely because, pursuant to Federal Rule of Civil Procedure 15(c), they relate back to the date of the original Complaint. Fed. R. Civ. P. 15(c); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007). Plaintiff's original Complaint was filed on May 3, 2022, within the two-year statute of limitations applicable to Plaintiff's Section 1983 claims in Virginia. *See Depaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("The statute of limitations in a § 1983 action 'is that which the State provides for personal-injury torts.'"); Va. Code Ann. § 8.01-243(A) (setting limitations for personal injury actions).

As Plaintiff did not have the information necessary to identify Hoosier and Willard by name at the time he filed his initial complaint, he attributed their actions throughout to officers identified as Does 4 and 5, "county or state deputies." Compl. ¶ 24. Mr. Smith ascertained the names of Hoosier and Willard during the discovery process and amended his complaint to replace references to Does 4 and 5 with these newly-identified defendants.

The claims against Defendants in Mr. Smith's Second Amended Complaint relate back to the date of the original Complaint because "(1) the claim[s] in the amended complaint arose out of the same transaction that formed the basis of the claim[s] in the original complaint"; (2) Hoosier and Willard "received notice of the action such that [they] will not be prejudiced in maintaining a defense to the claim"; and (3) Defendants "should have known that [they] would have originally been named a defendant 'but for a mistake concerning the identity of the proper party.'" *Goodman*, 494 F.3d at 467 (quoting Fed. R. Civ. P. 15(c)).

Defendants' counsel received the original Complaint within the notice period provided in Rule 4(m) and were aware that Plaintiff alleged claims against the officers present with Mr. Smith

at the hospital in early May 2020. Defendants should not have been caught by surprise when Plaintiff amended the complaint to correctly identify those parties as Defendants Hoosier and Willard once their names were provided by selfsame counsel in discovery.

**A.  The Claims against Defendants in Mr. Smith's Second Amended Complaint Arise out of the Same Transactions and Occurrences Set Forth in the Original Complaint.**

Defendants do not dispute that the claims in Plaintiff's Second Amended Complaint arise out of the same transaction as the original Complaint. Plaintiff's original complaint specifically brought claims against the "county or state deputies who were responsible for monitoring Mr. Smith … in his hospital room," Compl. ¶ 24, for shackling him to his hospital bed, ¶¶ 115–16, and for monitoring him during his bond hearing, ¶¶ 117–18.

These allegations are almost identical to those in the Second Amended Complaint, which have been changed only to identify "Doe 4" and "Doe 5" as Defendants Hoosier and Willard.[2] *See* 2d. Am. Compl. ¶¶ 21, 132–35. Under such circumstances, where "the substantive allegations in the amended complaint were identical to those contained in the initial complaint, the requirements of relation back under Rule 15(c) clearly apply." *Freight Drivers & Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, 784 F.3d 210, 218 (4th Cir. 2015).

**B.  Hoosier and Willard Will Not Be Prejudiced in Maintaining a Defense to Mr. Smith's Due Process Claims.**

Rule 15(c) requires that notice be sufficient to avoid prejudice, and Hoosier and Willard do not assert any prejudice would result from relation back of Mr. Smith's claims against them. *See, e.g.*, *Wyatt v. Owens* 317 F.R.D. 535, 540 (W.D. Va. 2016). Hoosier and Willard's sole reliance on the fact that the events alleged by Mr. Smith occurred nearly four years ago is

---

[2] NRVRJ Officer Benjamin Watkins is also named in the Second Amended Complaint as bearing responsibility for monitoring Mr. Smith during his hospitalization. The instant motion is brought solely on behalf of Hoosier and Willard so the claims against Defendant Watkins are not addressed herein.

insufficient to demonstrate such prejudice, as it is their knowledge during the time of the summons period — and not their knowledge at present — that is relevant to the relation back analysis. *Id.* at 541.

In *Wyatt v. Owens*, this Court examined the relation back of a Section 1983 claim brought against law enforcement defendants based on events that had occurred nearly four years prior. 317 F.R.D. 535 (W.D. Va. 2016) (providing "misidentification of two officers that were clearly involved in the incident (and should be expected to be included in the initial complaint) is precisely the kind of 'mistake' that Rule 15(c) governs"). The Court determined the amount of time that elapsed to be irrelevant, finding courts should only consider what the defendants "knew or should have known during the Rule 4(m) period." *Wyatt*, 317 F.R.D. at 541 (citing *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010). Willard and Hoosier are represented by the same counsel as other named Defendants, a fact that further weighs against any prejudice in their ability to prepare a defense in this case. *Id.* at 540.

### C. Hoosier and Willard Should Have Known They Would be Named Based on the Allegations in the Original Complaint.

"In the context of Rule 15(c), newly named defendants must have either actual or presumed notice of the action." *Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989). Notice "may be presumed when the nature of the claim is apparent in the initial pleading and the added defendant has either a sufficient identity of interest with the original defendant or received formal or informal notice of the claim." *Id.* Defendants Hoosier and Willard had presumed notice of Mr. Smith's claim, as (1) the nature of the claim against them in the initial pleading is apparent; (2) they share a sufficient identity of interest with both the Does 4 and 5 as well as other named Defendants in the initial pleading; and (3) they share counsel with Defendants identified by name in the initial Complaint.

1.  *The Nature of the Claim Against Hoosier and Willard Is Apparent in the Initial Pleadings.*

The nature of the actions giving rise to Mr. Smith's due process claims against Willard and Hoosier were apparent in Mr. Smith's initial pleading, wherein Mr. Smith identifies Doe 4 and Doe 5 as "county or state deputies who were responsible for monitoring Mr. Smith in his jail cell at NRVRJ and in his hospital room at Roanoke Hospital on or around May 3, 2020." Compl. ¶ 24. Smith described having awoken from Roanoke Hospital on or around this date to find Doe 4 and Doe 5 stationed in his room, where they "insisted that he be shackled to his hospital bed, despite the Roanoke Hospital nurses complaining that this impeded his care." Compl. ¶¶ 115-116.

Mr. Smith alleged that Does 4 and 5 took these actions despite their continued presence in his hospital room, his immobility and severely diminished physical capacity, and his inability to communicate without the use of his hands due to his intubation and placement on a ventilator. Compl. ¶¶ 115-116. Mr. Smith further identifies Does 4 and 5 as the individuals who supervised Mr. Smith during his bond hearing and held an iPad in front of his face so that he could see the magistrate judge during the hearing. Compl. ¶ 117.

These allegations are not only sufficient to provide Defendants notice that they were the Does 4 and 5 that Mr. Smith intended to identify in his initial Complaint, but also set forth the factual basis for Mr. Smith's due process claims.

2.  *Defendants Shared an Identity of Interest with Other Named Defendants.*

"Identity of interest can be established when the parties are 'so closely related in business or other activities that it is fair to presume that the added parties learned of the institution of the suit shortly after it commenced.'" *Wyatt*, 317 F.R.D. at 540 (quoting *Bruce v. Smith*, 581 F. Supp. 902, 906 (W.D. Va. 1984)). In *Wyatt v. Owens*, the court presumed notice to newly named

defendants, where the new defendants were two of five officers involved in an excessive force incident, but only three officers were named in the original complaint. 317 F.R.D. at 540. The court presumed that the new defendants, "by virtue of working alongside the three original defendants, received informal notice of the claim" and that they "either anticipated or should have anticipated that they would be served along with their peers." *Id*.

That is exactly the case here. Plaintiff's First Amended Complaint named NRVRJA itself, and fourteen separate NRVRJA officers who were involved in the treatment of Plaintiff, including Defendant Watkins who was involved in the exact same incidents as Defendants Hoosier and Willard. Am. Compl. ¶ 30; 2d. Am. Compl. ¶¶ 132–35. It can fairly be presumed that Hoosier and Willard received informal notice of this action through their fellow officers or their employer, NRVRJA.

The objective of the identity of interest inquiry "is to avoid the application of the statute of limitations when no prejudice would result to the party sought to be added by the amendment." *Wright & Miller*, 6A Fed. Prac. & Proc. Civ. § 1499 (3d ed.). As noted in Section I.B., *supra*, Defendants have not alleged that any prejudice would result against them as a result of their correct identification by name in Mr. Smith's Second Amended Complaint.

### 3.  *Defendants' Counsel Were Aware of this Action.*

Hoosier and Willard are represented by the same counsel as the NRVRJA Defendants named in the initial Complaint, further supporting their receipt of "fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it." *Goodman*, 494 F.3d at 471. In *Goodman*, the Fourth Circuit imputed Rule 15(c)(3) notice to a newly named defendant because the new defendant's attorneys were aware of the action, "eliminat[ing] any worry that [the new defendant] was caught by surprise when the complaint was amended" 494 F.3d at 473–74 (en

banc); *Williams v. Kincaid*, 45 F.4th 759, 775 (4th Cir. 2022), cert. denied, 143 S. Ct. 2414, 216 L. Ed. 2d 1270 (2023) (Rule 15(c)'s Notice requirement was satisfied where "counsel for [new defendants] received an electronic copy of the Amended Complaint within the 90-day period.")

The attorneys at Guynn Waddell, P.C. who represent Hoosier and Willard, have also represented CCSO and NRVRJ Defendants since they were served with the original Complaint within the 4(m) limitations period. *See* Affidavit of Service on NRVRJ (Dkt. 20); Waiver of Service for NRVRJ Officers (Dkt. 63); *see also* Order extending the 4(m) period until August 31, 2022. (Dkt. 55). Moreover, for the duration of this litigation, counsel for Hoosier and Willard have represented Benjamin Watkins, an NRVRJ officer present for and involved in the exact same conduct that gives rise to the claims against Hoosier and Willard. *See* 2d. Am. Compl. ¶¶ 132–35.

Defendant NRVRJ—represented by the same attorneys as Hoosier and Willard and named in the initial Complaint—"knew, better than anyone," which officers had been attending Mr. Smith at the hospital, and should have been " able rapidly to route the complaint to the appropriate [officer] responsible." *Goodman*, 494 F.3d at 473–74. In fact, NRVRJ immediately identified Hoosier and Willard as the parties present at the hospital in the first set of Interrogatories propounded on them after the start of discovery.

## II.     Mr. Smith Plausibly Alleged Due Process Claims Against Defendants.

Mr. Smith's Second Amended Complaint plausibly alleges that Hoosier and Willard — by shackling Mr. Smith to his hospital bed for a period of six (6) days and refusing to remove the restraints,  violated Mr. Smith's due process rights based on the particular facts and circumstances alleged.

### A. Defendants Inaccurately Analyze Mr. Smith's Due Process Claims Under the Standard Applicable to Eighth Amendment Violations.

"Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment." *Valentine v. Richardson*, 2006 WL 2624007, at *5-6 (D.S.C. 2006) (citing *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987)). The rationale for this distinction, as provided in *Ingraham v. Wright*, is that "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Id.* (citing *Ingraham v. Wright*, 430 U.S. 651, 671-72 (1977)).

The Fourteenth Amendment protects the liberty interests of a pre-trial detainee, and these interests include the right to freedom from bodily restraint. *See, e.g., Youngberg v. Romeo*, 457 U.S. 307, 316 (1982) ("[l]iberty from bodily restraint has always been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action") (internal citation omitted)). "The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that serves to punish a pre-trial detainee." *May v. Sheehan*, 226 F.3d 876, 884 (7th Cir. 2000) (citing *Youngberg*, 457 U.S. at 316; *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979); and *Murphy v. Walker*, 51 F.3d 714, 717-18 (7th Cir. 1995)).

"In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society." *Youngberg*, 457 U.S. at 320-21 (citations omitted). "The use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve." *Id.* (citing *Wolfish*, 441 U.S. at 561).

In *May v. Sheehan*, the Seventh Circuit upheld a pre-trial detainee's substantive due process claim upon a motion to dismiss. The court found that the practice of shackling detainees could reasonably be found not to rationally relate to security concerns under the circumstances alleged. *May*, 226 F.2d at 884. The court found this especially true based on (1) the limited threat posed by the detainee based on his medical condition; and (2) the continuous presence of a guard within the hospital room. *Id.* (". . . it is hard to see how shackling an AIDS patient to his or her bed around the clock, despite the continuous presence of a guard, is an appropriate policy for carrying out [the] purpose [of addressing security concerns]."

The facts and claims at issue in *May* are analogous to the instant matter. Mr. Smith, like the plaintiff in *May*, suffered from a medical condition that rendered him weak and immobile,  and he remained in the presence of at least one, armed law enforcement officer at all relevant times. As in *May*, it is difficult to imagine how, under these circumstances, Mr. Smith's restraint in any way furthered the interests relied upon by Defendants: protection of hospital personnel, furtherance of Mr. Smith's own safety, or prevention of his escape. Def.'s Mot. to Dismiss at 11.

Defendants have no legitimate security justification for Mr. Smith's shackling. At the time, Mr. Smith had just woken up from emergency spinal surgery, was intubated, heavily sedated, and permanently paralyzed from the chest down. 2d. Am. Compl. ¶¶ 132, 142. Given his condition, it is simply not plausible that Mr. Smith posed a flight risk or a danger to those around him. *See also Nelson v. Corr. Med Servs.*, 583 F.3d 522, 530 (8th Cir. 2009) (finding there was no penological interest in shackling an inmate who was "physically unable to flee because of the pain she was undergoing and the powerful contractions she was experiencing as her body worked to give birth.").

The case law relied upon by Defendants is entirely distinguishable from the instant matter, and does not support Defendants' conclusion that "restraining a hospitalized inmate to his bed

during his or her entire hospitalization . . . does not amount to a constitutional violation." Def.'s Mot. to Dismiss at 11.[3] In general, the cases cited by Defendants examine whether the shackling of a convicted prisoner, under facts and circumstances unique to each case, constitutes cruel and unusual punishment under the Eighth Amendment.

In the first case relied upon by Defendants, *Coleman v. N.C. v. Dep't. of Public Safety*, 2023 WL 5493586 (W.D.N.C. Aug. 24, 2023) (unreported), the court evaluated, upon a motion for summary judgment, the claims of a convicted prisoner that defendants violated his Eighth Amendment rights based on the conditions of his confinement and deliberate indifference to his serious medical needs. Unlike *Coleman*, Mr. Smith is not a convicted prisoner. The summary judgment standard employed in *Coleman* does not apply to Defendants' challenge to the sufficiency of Mr. Smith's pleadings in the instant matter, and the analysis of Eighth Amendment claims found in the case is merely instructive; it does not define due process rights identical to those maintained by Mr. Smith pursuant to the Fourteenth Amendment.

In another case cited by Defendants, *Holloman v. Kiser*, 2021 WL 1215855 (W.D. Va. Mar. 31, 2021) (unreported), this Court evaluated upon a motion to dismiss the claims of a plaintiff, a convicted inmate being held at Red Onion State Prison, for violation of his Eighth Amendment rights based on his conditions of confinement, which included being restrained to a hospital bed for approximately fifty (50) hours.

*Holloman* is both legally and factually distinct from the instant matter. Mr. Smith remained restrained to his hospital bed for at least six days: nearly three times as long as the plaintiff in *Holloman*. While this Court found the treatment of the plaintiff in *Holloman* did not constitute

---

[3] Nor does Defendants' conclusion align with the facts in this matter, as Mr. Smith was a pre-trial detainee and not an inmate at the time of his hospitalization.  Defendants appear to acknowledge this fact later within their motion. Defs.' Mot. to Dismiss and for Summ. J. at 12.

"cruel and unusual punishment" as it did not amount to a "punishment[] . . . incompatible with 'the evolving standards of decency that mark the progress of a maturing society" *id.* at *4 (internal citations omitted), this standard does not apply to Mr. Smith's claim. As a pretrial detainee, Mr. Smith maintained the right to be free from *any* punishment, not just punishment deemed cruel and unusual under the high bar applicable to Eighth Amendment claims involving conditions of confinement.

Similarly, in *Adams v. Kirby*, 2007 WL 963304 (E.D. Cal. Mar. 29, 2007) (unreported), the court evaluated the claims of an inmate who remained in a leg restraint while hospitalized for an unspecified length of time. The holding in *Adams* relies upon the standard for evaluating prisoner due process claims found in *Sandin v.Conner*, which provides that a prisoner's liberty interests are "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Adams*, 2007 WL 963304, at *4 (E.D. Cal. 2007) (citing *Sandin*, 515 U.S. at 472 at 484). The Fourth Circuit has repeatedly held that the standard provided by the Supreme Court in *Sandin* does not apply to pretrial detainees. *See, e.g., Dilworth v. Adams*, 841 F.3d 246, 252-52 (4th Cir. 2016).

The final case cited by Defendants, *Boyd v. Alameda County*, involves the examination, upon summary judgment, of a convicted prisoner's due process claim arising from having been denied access to an attorney. 2005 WL 2171870 (N.D. Ca. Sept. 6, 2005) (unreported). *Boyd* bears no relation to Mr. Smith's claims against Defendants or the arguments put forward in their Motion to Dismiss.[4]

### B. The Eighth Amendment Standard of Liability is Instructive in Determining the Minimum Liberty Interests at Issue During Mr. Smith's Hospital Detention.

---

[4] The Court in *Boyd* did not hold, as Defendants assert, that being "handcuffed to a bed 24/7 for 17 days fell short of a constitutional violation." Rather, the court found the plaintiff in that matter failed to cite any record evidence in support of that specific fact. 2005 WL 2171870, at *5.

The rights of a pretrial detainee are greater than those afforded to a convicted prisoner. However, because "[t]he due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner," *id*., the Court may look to Eighth Amendment precedents in considering a Fourteenth Amendment claim, s*ee Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). In this way, Eighth Amendment precedent is instructive to the extent it demonstrates what conduct is violative of the Eight Amendment for prisoners, and therefore, necessarily, violative of the higher Fourteenth Amendment standard for pretrial detainees.

Multiple courts have found an Eighth Amendment violation where the use of restraints or handcuffs causes "a substantial risk of physical harm" or "unnecessary pain," without penological justification. *Hope v. Pelzer*, 536 U.S. 730, 737–38 (2002) (Eighth Amendment violation was "obvious" where inmate was handcuffed to a hitching post for a 7-hour period); *Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir. 1996) (finding "a reliable inference of wantonness in the infliction of pain" where inmate was confined in four-point restraints for eight hours, without permitting him to wash off mace, use a toilet, or receive medical attention).

Mr. Smith has alleged that Defendants Hoosier and Willard acted with deliberate indifference to his health and safety by shackling him to his hospital bed during "all times where [he] was not actively on the operating table," until his bond hearing—totaling at least six days— and that Hoosier and Willard refused to remove those shackles despite "Roanoke Hospital nurses complaining that this impeded his care." 2d. Am. Compl. ¶ 133. The nurses' request that Defendants remove the shackles raises a plausible inference that the handcuffs were creating a substantial risk of physical harm and demonstrates that Defendants were aware of that risk and chose not to act. *See Nelson*, 583 F.3d at 529–31.

In *Nelson*, the Eight Circuit found that repeated requests to unshackle a hospitalized inmate to permit medical examinations, and at least one explicit expression of dissatisfaction with the shackling by nurses, to be evidence of a medical judgment that inmate should not have been shackled at all. *Id*. Further, the Eighth Circuit found those requests to be evidence from which a factfinder could infer that the officer recognized that the shackles interfered with the inmate's medical care. *Id*. So too here.

Further, constant shackling of a paralyzed patient in critical medical condition for six (6) or more days rises far above *de minimis* level of pain and suffering necessary to state an Eighth Amendment violation. *Sadler v. Young*, 325 F. Supp. 2d 689, 703–04 (W.D. Va. 2004), rev'd, 118 F. App'x 762 (4th Cir. 2005) ("[A]ny reasonable jury would find that completely immobilizing an inmate in five-point restraints for nearly forty-eight hours constitutes more than de minimis pain … regardless of whether there is proof that the inmate suffered any lasting injury."); *Edwards v. White*, No. 7:19CV00324, 2022 WL 4350433, at *4–6 (W.D. Va. Sept. 19, 2022) ("[C]ontinued use of five-point restraints on an inmate who does not currently pose any threat to security or discipline can violate the Eighth Amendment, even when that inmate does not suffer significant physical injuries.").

The conditions present in the instant matter are a far cry from those in the cases cited by Defendants, where there was no evidence that the shackling was impeding medical care and where the inmates were still healthy enough to be a safety risk. For example, in *Coleman v. N.C. Department of Public Safety*, there were legitimate penological interests in restraining the defendant, a convicted prisoner, as "he was still well enough to walk around on his own, eat on his own, and use the bathroom on his own," and "he was potentially strong enough to fight or use force while in the hospital." *Coleman*, 2023 WL 5493586, at *12. Similarly, in *Holloman v. Kiser*,

the need to restrain an inmate's physical movements was bolstered by his continued ability to "eat, sleep, and use the bathroom" while hospitalized. *Holloman*, 2021 WL 1215855, at *5. These factors were not present in the instant case; Mr. Smith, unlike the inmates in *Holloman* and *Coleman*, was immobile and weak. Defendants gained no security or safety by shackling Mr. Smith.

**III.     Defendants Are Not Entitled to Qualified Immunity with Respect to Mr. Smith's Due Process Claims.**

Defendants violated Mr. Smith's due process rights under the Fourteenth Amendment when they required he remain shackled to his hospital bed for a period of at least six days despite requests from medical staff that his restraints be removed. At the time of Defendants' actions at issue, it was clearly established that the restraint of a pretrial detainee — even if instituted for a non-punitive purpose — becomes excessive and unconstitutional where it is no longer rationally related to a legitimate government purpose, such as concerns related to security.

**A.  Mr. Smith Has Plausibly Alleged Defendants' Violation of His Due Process Rights Under the Fourteenth Amendment.**

For the reasons provided in Section II, *supra*, the actions of Defendants alleged by Mr. Smith constitute a violation of his due process rights under the Fourteenth Amendment.

Defendants' actions cannot be attributed to a "bad guess in a gray area," as Defendants contend. Defs.' Mot. to Dismiss at 16 (citing *Maciariello v.* Sumner, 973 F.2d 295, 298). Defendants shackled Mr. Smith, a man arrested for a nonviolent offense and incapable of standing or walking, to the bed in his hospital room for a period of at least six (6) days without reprieve. Mr. Smith's only hope of effectively communicating to his medical providers and to the magistrate judge hearing his request for bail required that he have use of his hands, as intubation — followed by his placement on a ventilator — prohibited him from speaking. Furthermore, Defendants' insistence on shackling Mr. Smith to at least one restraint during necessary medical care and

18

procedures impeded his ability to receive adequate treatment to prevent bedsores, and significantly increased his pain and discomfort during his hospitalization.

Defendants kept Mr. Smith shackled despite the obvious and highly visible seriousness of his medical condition, freeing him only while he actively underwent surgery related to the substantial medical emergency he continued to experience. Hoosier and Willard took these actions despite Mr. Smith's clear physical limitations and the presence of at least one armed law enforcement officer in Mr. Smith's hospital room to monitor and observe his movements at all times.

A reasonable person in Defendants' position would know the restraint they imposed on Mr. Smith did not rationally relate to any security concern imposed by Mr. Smith at Roanoke Hospital under these circumstances. Defendants' actions were a clear violation of Mr. Smith's due process rights that cannot be excused as a reasonable mistake.

   **B.  It is Clearly Established that Defendants' Actions Constitute a Violation of Mr. Smith's Due Process Rights.**

Although Defendants acknowledge they bear the burden of establishing that the rights at issue were not clearly established, they have failed to meet this burden or provide any more than conclusory statements in support of their entitlement to qualified immunity. Defs.' Mot. to Dismiss and for Summ. J. at 17 (citing *Mays*, 992 F.3d at 302 n.5 and *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007)).

More than four decades ago, the Supreme Court found the right to freedom from bodily restraint constituted an interest that was "clear in the prior decisions of this Court." *Youngberg*, 457 U.S. at 316 (citing *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 18 (1979) (Powell, J., concurring in part and dissenting in part)). The Court in *Youngberg* expressly provided that "[t]his interest survives criminal conviction and incarceration." *Id.*

It is clearly established that a pretrial detainee has a due process right to be free from bodily restraint that is not "rationally related to a legitimate nonpunitive government purpose" or that "appears excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 397-99 (2015) (quoting *Wolfish*, 441 U.S. at 561)); *see also May*, 226 F.3d at 884.[5] Where responsible officials, based on the facts known to them, cannot reasonably perceive that an inmate or detainee poses a threat to the safety of himself or others — their actions cannot be viewed as rationally related to any such threat. *See, e.g. Whitley v. Albers*, 475 U.S. 312, 321 (U.S. 1986).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants James Hoosier and Christopher Willard's Motion to Dismiss and for Summary Judgment and allow

---

[5] Other sister circuits have found actions similar to those of Defendants constituted a violation of an individual's due process rights.

In *May v. Sheehan*, the Seventh Circuit found it clearly established that "pretrial detainees may not be shackled without a good penological or medical reason." 226 F.3d at 884 (citing *Murphy*, 51 F.3d at 718); *see also Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 530 (8th Cir. 2009) (finding no penological interest in shackling an inmate who was "physically unable to flee because of the pain she was undergoing and the powerful contractions she was experiencing as her body worked to give birth.")

Similarly , in *Mendiola-Martinez v. Arpaio*, the Ninth Circuit held a reasonable jury could find the continued restraint of a hospitalized inmate exposed her to a substantial and unjustified risk of harm where: (1) she was arrested for a nonviolent crime; (2) did not demonstrate she posed a flight risk or a danger to others; (3) was in a physical condition that made it unlikely she would flee or fight; and (4) remained in the presence of an armed officer at all times during her hospitalization. 836 F.3d 1239, 1254-56 (9th Cir. 2016).

*See also Terry v. County of Milwaukee,* 357 F. Supp. 3d 732, 755-56 (E.D. Wisc. 2019) (citing *May*, 226 F.3d at 884; and *Wolfish*, 441 U.S. at 561); *Brown v. Dart*, 2021 WL 4401492, at *5 (N.D. Ill., Sept. 25, 2021) ("even when shackling may serve a rationally related non-punitive purpose, shackling can still violate substantive due process if it is executed in an excessive manner"); *Ragnone v. Porter County*, 2015 WL 5673113, at *7 (N.D. Ind. Sept. 25, 2015).

Mr. Smith to proceed with his claims against Defendants.

Dated: July 1, 2024                          Respectfully submitted,

                                             */s/Nicole M. Rheault*
                                             Nicole Molinaro Rheault (D.C. Bar. No. 1780028)
                                             (pro hac vice)
                                             Genevieve E. Mesch (D.C. Bar. No. 90008005)
                                             (*pro hac vice*)
                                             Aderson Francois (D.C. Bar. No. 498544)
                                             (pro hac vice)
                                             CIVIL RIGHTS CLINIC
                                             GEORGETOWN UNIVERSITY LAW
                                             CENTER
                                             600 New Jersey Avenue NW, Suite 352
                                             Washington, DC 20001
                                             (202) 661-6506
                                             (202) 661-6710
                                             (202) 661-6721
                                             Nicole.Rheault@georgetown.edu
                                             Genevieve.Mesch@georgetown.edu
                                             Aderson.Francois@georgetown.edu

                                             */s/Joshua Erlich*
                                             Joshua Erlich (VSB No. 81298)
                                             Katherine L. Herrmann (VSB No. 83203)
                                             THE ERLICH LAW OFFICE, PLLC
                                             2111 Wilson Blvd. #700
                                             Arlington, VA 22201
                                             Tel: (703) 791-9087
                                             Fax: (703) 722-8114
                                             jerlich@erlichlawofice.com
                                             kherrmann@erlichlawoffice.com

                                             *Counsel for Plaintiff Joshua Lee Smith*

21

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024, I filed a copy of the foregoing document with the

Clerk of the Court using the CM/ECF system, which will provide copies to all counsel of record.

*/s/ Nicole Rheault*

Counsel for Plaintiff